Case 3:22-cv-00233 Document 21 Filed on 11/10/22 in TXSD Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
November 10, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MAURO HINOJOSA, | § | |
| | § | |
| Plaintiff. | § | |
| | § | CIVIL ACTION NO. 3:22-cv-00233 |
| V. | § | |
| | § | |
| CALLAN MARINE LTD., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Callan Marine Ltd.'s Motion to Dismiss Plaintiff's Original Complaint or, Alternatively, Motion to Strike Jury Demand. *See* Dkt. 11. Having reviewed the motion, the response, the Original Complaint, and the applicable law, I recommend that the motion to dismiss be **GRANTED** in part and **DENIED** in part, and the motion to strike the jury demand be **DENIED**.

## BACKGROUND

Plaintiff Mauro Hinojosa ("Hinojosa") contends that he suffered personal injuries on August 1, 2020, while working for Callan Marine Ltd. ("Callan Marine") aboard the M/V SEA OAK in Galveston Bay, Texas. More specifically, Hinojosa claims that he "was forced to lift a heavy cable without adequate mechanical assistance and suffered a severe injury to his back, arms, knees, legs and other parts of his body." Dkt. 1 at 2. At the time of the accident, Garber Bros. Ltd. ("Garber") allegedly owned the M/V SEA OAK, and both Garber and Callan Marine allegedly operated the vessel.

Plaintiff's Original Complaint asserts a litany of causes of action: (1) Negligence—Jones Act; (2) General Maritime Law—Unseaworthiness; (3) General Maritime Law—Maintenance and Cure; (4) General Maritime Law—Negligence; (5) 33 U.S.C. § 905(b)—Negligence; and (6) Retaliatory Discharge/Abusive Discharge/Wrongful Termination.

With one exception, Callan Marine has moved to dismiss all causes of action brought by Hinojosa on the grounds that Hinojosa has failed to state a claim for relief. The one exception: Callan Marine does not, at this initial pleading stage, challenge Hinojosa's Retaliatory Discharge/Abusive Discharge/Wrongful Termination claim.

Separate and apart from its motion to dismiss, Callan Marine also asks me to strike Hinojosa's jury demand. Callan Marine argues that claims arising under admiralty jurisdiction, like those asserted here, are not entitled to trial by jury.

## RULE 12(b)(6) LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The United States Supreme Court has emphasized that the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

To survive a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned

up). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (cleaned up). All that said, a Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quotation omitted).

## MOTION TO DISMISS

**A.   Negligence—Jones Act**

Hinojosa's first cause of action is for "Negligence—Jones Act." Dkt. 1 at 3. In a nutshell, Hinojosa contends that both Callan Marine and Garber are responsible under the Jones Act for the injuries he sustained on the M/V SEA OAK.

Under the Jones Act, a "seaman injured in the course of employment" possesses a cause of action for his employer's negligence. 46 U.S.C. § 30104. The Jones Act gives a seaman a right of action only against his employer "and against no others." *Roth v. Cox*, 210 F.2d 76, 78 (5th Cir. 1954). The employer is held to a standard of ordinary prudence under the circumstances. *See Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir.1997). "A seaman is entitled to recovery under the Jones Act, therefore, if his employer's negligence is the cause, in whole or in part, of his injury." *Id.*

Callan Marine argues that the Jones Act claim should be dismissed because the Original Complaint fails to provide factual support that makes the claim plausible. I am not persuaded. Plaintiff's Original Complaint alleges that Callan

Marine employed Hinojosa.[1] The lawsuit further alleges that the injuries Hinojosa suffered on the M/V SEA OAK were caused by the negligence of Callan Marine and Garber. More specifically, Hinojosa identifies a laundry list of reasons, *see* Dkt. 1, ¶ 10 (a)–(y), why the actions—and inactions—of Callan Marine and Garber constituted negligent conduct. By way of example, the Original Complaint complains that Callan Marine and Garber failed: "to use a mechanical means to lift the heavy cables," "to use due care to make reasonable and periodic inspection of said vessel, its equipment and appliances," "to adequately instruct their crew," "to properly maintain their equipment," and "to properly inspect their equipment." *Id.* at 3–4. These allegations are enough to survive Rule 12(b)(6) scrutiny. All a plaintiff is required to do to pass muster at the Rule 12(b)(6) stage is plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Hinojosa is not required to present evidence showing the strength of his claim. He is merely required to allege facts and causes of action that show a plausible claim to relief.

On the face of the Original Petition, Hinojosa has pled factual content that allows the reasonable inference that Callan Marine is liable under the Jones Act—Hinojosa is a seaman; an act of negligence by an officer, agent, or employee of Callan Marine; and a resulting injury by Hinojosa. I fully recognize that some of the items contained in Hinojosa's laundry list of negligent conduct are, unquestionably, legal conclusions without any factual support. These include statements like "[f]ailure to act and correct a hazard," "[f]ailure to intervene," and "failure and negligence in other respects that will be shown at trial." Dkt. 1 at 4–5. Nonetheless, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to Hinojosa, as I must, I conclude that Hinojosa's Jones Act

---

[1] To be clear, the only motion to dismiss before me is brought by Callan Marine. At this time, I am not opining on whether the claims brought by Hinojosa against Garber are sufficiently pled.

claim satisfies Rule 12(b)(6). *See Harmon v. City of Arlington*, 16 F.4th 1159, 1162 (5th Cir. 2021).

**B.    General Maritime Law—Unseaworthiness**

Next, Hinojosa brings a claim for "General Maritime Law—Unseaworthiness." Dkt. 1 at 5. Independent from a Jones Act claim, a seaman may claim his injuries were caused by the unseaworthiness of a vessel under general maritime law. *See Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498 (1971) ("[L]iability based upon unseaworthiness is wholly distinct from liability based upon negligence."). "Although the shipowner has an absolute duty to provide a seaworthy vessel, the vessel need not be accident free." *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1432–33 (5th Cir. 1988) (cleaned up). A vessel is deemed unseaworthy if a condition of the vessel "presents an unreasonable risk of harm to the seaman." *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007). The two elements of an unseaworthiness claim are: (1) the vessel or the vessel's equipment was not "reasonably suited for the purpose or use for which they were intended," and (2) "the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988).

The Original Complaint does not go into any detail on the unseaworthiness claim, other than blithely asserting that "[t]he injuries sustained by the Plaintiff[]were caused by the unseaworthiness of Defendants, including [their] vessel[s], [their] appliances, appurtenances, and equipment." Dkt. 1 at 5. That's it. Nothing more. Notably absent from the Original Complaint is any discussion or explanation as to how the M/V SEA OAK was unseaworthy.

I agree with Callan Marine that "the entirety of the unseaworthiness claim . . . is a legal conclusion with no factual support." Dkt. 11 at 6. Simply mentioning the word "unseaworthiness" once or twice in the live pleading is not enough, by itself, to withstand a Rule 12(b)(6) motion to dismiss. Although, as

5

stated earlier, I must accept all factual claims in the Original Complaint as true and draw all reasonable inferences in Hinojosa's favor, Hinojosa must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. He has not done so. The unseaworthiness claim should be dismissed.

### C. General Maritime Law—Maintenance and Cure

Hinojosa's third claim for relief is for maintenance and cure under general maritime law. "Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015) (quotation omitted). "Maintenance is a daily stipend for living expenses, whereas cure is the payment of medical expenses." *Id.* (quotations omitted). "Generally, an employer must pay maintenance and cure to any seaman who becomes ill or suffers an injury while in the service of the vessel, regardless of whether either party was negligent." *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 301 (5th Cir. 2008) (quotation omitted). The obligation of a shipowner to pay maintenance and cure is "deep-rooted in maritime law and is an incident or implied term of a contract for maritime employment." *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968).

Callan Marine argues that the Original Complaint "alleges a claim for maintenance and cure without naming which Defendant, if either, is [Hinojosa's] employer for purposes of the maintenance and cure claim." Dkt. 11 at 7. I respectfully disagree. The Original Complaint identifies only one entity—Callan Marine—as Hinojosa's employer. To the extent a maintenance and cure duty is owed, it is clear from the Original Complaint that Callan Marine is the only entity that could possibly be liable for such a claim. Callan Marine also complains that although the lawsuit references two vessels, it is not clear which vessel Hinojosa was working on at the time of the accident. Once again, I disagree. The first paragraph of the Factual Allegations section of the Original Complaint expressly

states that Hinojosa was assigned to work on the M/V SEA OAK and that the accident occurred on the M/V SEA OAK. Hinojosa's maintenance and cure cause of action should be permitted to proceed.

**D.    General Maritime Law—Negligence**

Hinojosa's fourth claim for relief is "for general maritime negligence, in law and admiralty, pursuant to [§] 905(a) of the [Longshore and Harbor Workers' Compensation Act ("LHWCA")]." Dkt. 1 at 7.

"Like other workers' compensation statutes, the LHWCA represents a compromise between employees and their employers whereby employers relinquish their defenses to tort actions in exchange for limited and predictable liability, and employees accept the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail." *Latimer v. Chet Morrison Contractors*, No. 11-CV-806, 2013 WL 5592967, at *3 (W.D. La. Oct. 9, 2013). Although the LHWCA generally bars an employee from suing his employer, there is an exception. Section 905(a) provides, in relevant part, that "if an employer fails to secure payment of compensation as required by this chapter, an injured employee . . . may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death." 33 U.S.C. § 905(a).

"[N]egligence is an actionable wrong under general maritime law." *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005). The elements of a maritime negligence cause of action are essentially the same as those for non-admiralty negligence claims under the common law. *See id.* To state a claim for relief for negligence under maritime law, the "plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010) (cleaned up).

At this juncture, I think Hinojosa has done enough to clear the pleading hurdle imposed by the Federal Rules of Civil Procedure for his general maritime negligence claim. He specifically asserts that no benefits have been paid to date under the LHWCA, thus allowing him to bring a general maritime negligence claim against his employer. For the same reasons Hinojosa's Jones Act claim survives at the Rule 12(b)(6) stage, his general maritime negligence claim survives as well. Put simply, the Original Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Callan Marine argues that the general maritime negligence claim is not ripe because it is conditioned on Defendants' failure to secure payment of compensation under the LHWCA to date. This argument is a tad too clever. So long as no benefits are paid under the LHWCA, Hinojosa is free to pursue a general maritime negligence claim. Because he has pled that no LHWCA benefits have been paid to him to date, Hinojosa can move forward with his general maritime negligence claim. If, at a later date, Hinojosa receives LHWCA benefits, then he will not be allowed to move forward with the general maritime negligence claim. *See* 33 U.S.C. § 905(a).

One more point. As noted above, the Jones Act grants "a seaman" a cause of action against his employer in negligence. 46 U.S.C. § 30104. Critically, "[o]nly seamen may sue under the Jones Act." *Sanchez v. Smart Fabricators of Tex., L.L.C.*, 997 F.3d 564, 568–69 (5th Cir. 2021). By contrast, the LHWCA governs the rights of non-seamen maritime workers (such as longshoremen or stevedores). *See id.* at 569. In short, "the seaman's remedy is limited to rights granted by the Jones Act, and rights granted to other maritime workers are provided exclusively by the LHWCA. The two remedies are mutually exclusive." *Id.* Although Hinojosa can, obviously, plead alternative theories of relief at this preliminary pleading stage, he cannot recover at trial against his employer under both a Jones Act claim and a general maritime negligence claim.

### E. 33 U.S.C. § 905(b)—Negligence

Hinojosa also asserts a cause of action for negligence under § 905(b) of the LHWCA. *See* 33 U.S.C. § 905(b). Section 905(b) provides that non-seaman maritime workers injured "by the negligence of a vessel" may bring an action against the vessel or the vessel owner. *Id*. Section 902(21) of the LHWCA defines "vessel" as meaning "any vessel upon which or in connection with which" a covered employee is injured "in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member." 33 U.S.C. § 902(21).

Callan Marine contends that the § 905(b) claim is fatally defective for the same reasons it argued the Jones Act claim should fail. Because I rejected Callan Marine's arguments in the context of the Jones Act claim, I also reject them here. The § 905(b) claim should survive the Rule 12(b)(6) motion to dismiss.

****

In sum, I recommend that all of Hinojosa's causes of action—except the unseaworthiness claim—survive the Rule 12(b)(6) inquiry.

### MOTION TO STRIKE JURY DEMAND

In the Original Complaint, Hinojosa requests a "TRIAL BY JURY ON ALL COUNTS." Dkt. 1 at 10. Callan Marine ask me to strike Hinojosa's demand for a jury trial because it "is inconsistent with [a]dmiralty jurisdiction and the applicable law." Dkt. 11 at 9. I disagree.

To begin, I note that admiralty jurisdiction provides the only basis for this Court to exercise subject matter jurisdiction over the instant dispute. There is no diversity jurisdiction present and no federal question at issue. Hinojosa's Original Complaint expressly invoked admiralty jurisdiction by stating that "[t]his is a case of maritime jurisdiction pursuant to 28 U.S.C. § 1333(1)." Dkt. 1 at 2.

It has long been the general rule that a plaintiff who elects to bring a suit under admiralty jurisdiction is not entitled to a trial by jury. *See Waring v. Clarke*, 46 U.S. 441, 460 (1847). As the Fifth Circuit has explained: "[t]here is no right to a

9

jury trial where the complaint contains a statement identifying the claim as an admiralty or maritime claim." *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 587 (5th Cir. 1983). There is, however, one notable exception.

"The right to a jury trial under the Jones Act is a statutory right." *Rachal v. Ingram Corp.*, 795 F.2d 1210, 1216 (5th Cir. 1986). The Jones Act specifically provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, *with the right of trial by jury*, against the employer." 46 U.S.C. § 30104 (emphasis added). Accordingly, "[i]n a nondiversity action under the Jones Act . . . the seaman, on proper request, is entitled to a jury trial only by virtue of the Jones Act statutory grant." *Rachal*, 795 F.2d at 1213; *see also Hale v. Omega Protein, Inc.*, No. 10-282, 2011 WL 121898, at *1 (E.D. La. Jan. 11, 2011) ("Of course, a trial by jury is not available to the litigants when the Court sits in admiralty *except as provided by a statute* such as the Jones Act."). "[W]here the plaintiff brings a Jones Act claim, the mere fact that it is appended to an admiralty claim does not defeat the statutory right to a trial by jury applicable to Jones Act claims." *Olaru v. Tidewater, Inc.*, No. 10-1567, 2011 WL 4073002, at *1 (E.D. La. Sept. 13, 2011).

Hinojosa is thus entitled to a trial by jury on his Jones Act claim. The question then becomes what happens to the other admiralty claims—maintenance and cure, general maritime negligence, and § 905(b) negligence—set forth in the Original Complaint. Are those claims to be tried before the bench or before a jury of Hinojosa's peers?

Fortunately, I do not have to look too far to discover the answer. The United States Supreme Court addressed this exact question in *Fitzgerald v. United States Lines Co.*, 374 U.S. 16 (1963). In that case, the plaintiff brought an action for injuries he suffered on the defendant's ship pursuant to the Jones Act (which explicitly provides a seaman with the right to a jury trial), and he joined claims for unseaworthiness and maintenance and cure (which traditionally do not require

trial by jury). *See id.* at 17. The district court judge granted a jury trial for the Jones Act and the unseaworthiness claims but held the question of recovery under maintenance and cure in abeyance to try to the bench after the jury trial on the other two issues. *See id.* At trial, the jury rejected the plaintiff's Jones Act and unseaworthiness claims. *See id.* The district court judge then dismissed the jury and decided the maintenance and cure claim himself. *See id.* The plaintiff appealed, arguing that all of his claims should have been decided by the jury. *See id.* The Second Circuit found that it was proper for the trial court to try the maintenance and cure action to the bench. *See id.*

The Supreme Court reversed, noting that while the Seventh Amendment does not require a jury trial in admiralty cases, no provision of the Constitution nor "any statute of Congress or Rule of Procedure, Civil or Admiralty, forbid[s] jury trials in maritime cases." *Id.* at 20.

> The Supreme Court [in *Fitzgerald*] held that it was error for the district court to dismiss the jury because all of the claims ought to have been tried together to the same fact finder. The Court noted that the procedure used by the district court, trying a portion of the case to the jury and a portion to the bench, was commonly employed in Jones Act cases, but the Court concluded that separating the claims was an "outdated" and "wasteful" practice. [*Fitzgerald,* 374 U.S.] at 18–20. Splitting the claims "unduly complicates and confuses a trial, creates difficulties in applying doctrines of res judicata and collateral estoppel, and can easily result in too much or too little recovery." *Id.* at 19. The Court held that, because the claims arose out of one set of facts, "[o]nly one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments." *Id.* at 21.
>
> . . . .
>
> Because there was no "statutory or constitutional obstacle" to trying admiralty claims to a jury, the Court held that concerns of judicial efficiency and the fair administration of justice override the historic tradition of trying admiralty claims to the bench. *Id.* at 20–21. These same concerns of inefficiency and potential problems applying res judicata and collateral estoppel are present whenever a claim carrying

11

> the right to a jury trial is joined with an admiralty claim that carries no right to a jury trial.

*Luera v. M/V Alberta*, 635 F.3d 181, 191–92 (5th Cir. 2011) (cleaned up).

Given the Supreme Court's ruling in *Fitzgerald*, it should come as no surprise that the Fifth Circuit has repeatedly recognized a plaintiff's right to a jury trial in cases that join admiralty claims with Jones Act claims. *See Daniel v. Ergon, Inc.*, 892 F.2d 403, 409 (5th Cir. 1990) ("[G]eneral maritime claims could (and should) be heard before a jury when joined with Jones Act claims."); *Rachal*, 795 F.2d at 1213 ("When non-jury admiralty claims are joined in the same action [with a Jones Act claim], they are treated as pendent to the Jones Act claim, and are tried together for convenience."); *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 616 (5th Cir. 1985) ("A seaman may obtain a jury trial [on a non-jury admiralty claim] by joining it with a Jones Act claim and demanding [a] jury trial."). I will not stray from this line of reasoning. Requiring Hinojosa to split up his lawsuit, submitting part of it to a jury and part of it to a judge, unduly complicates and confuses a trial. *See Fitzgerald*, 374 U.S. at 21 (utilizing dual fact-finders is "cumbersome, confusing, and time consuming" and "completely unnecessary"). I hold that Hinojosa's Jones Act claim and the related admiralty claims, all which arise out of the same incident, should be tried together before a jury.[2]

## CONCLUSION

For the reasons set forth above, I recommend that Callan Marine's motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**. More specifically, I recommend that Hinojosa's unseaworthiness claim be dismissed for failure to state a claim and all other claims be allowed to proceed through discovery. As for Callan Marine's motion to strike Hinojosa's jury demand, I **DENY** that request.

---

[2] A motion to strike a jury demand is considered a nondispositive matter for which a magistrate judge can issue an order and opinion as opposed to a report and recommendation. *See Deslauriers v. Chertoff*, No. 07-cv-184, 2009 WL 3418525, at *1 n.1 (D. Me. Oct. 20, 2009) (collecting cases).

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 10th day of November 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE